**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**PATRICIA D. RADCLIFFE,**
**DERRICK MCALISTER,**
**DOREEN E. MCALISTER,**

                            **Plaintiffs,**

                  **-v-**                                        **17-CV-512V(Sr)**

**UNITED STATES OF AMERICA,**

                            **Defendant.**
_____


**REPORT, RECOMMENDATION AND ORDER**

             This case was referred to the undersigned by the Hon. Lawrence J.

Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions. Dkt. #9.


             On August 22, 2013, plaintiffs' father, James T. McAlister ("Mr.

McAlister"), signed an employee claim form under Part B of the Energy Employees

Occupational Illness Compensation Program Act of 2000, as amended, 42 U.S.C.

§§ 7384 *et seq*. ("EEOICP"). Dkt. #13-1, p.207. The EEOICP is a federal compensation

program for individuals with illnesses that were caused by exposure to radiation or

beryllium in the course of their work for the Department of Energy and certain of its

contractors and subcontractors. *See Freeman v. United States Dep't of Labor*, 653 Fed.

App'x 405, 407 (6th Cir. 2016), *citing* 42 U.S.C. § 7384. In his application, Mr. McAlister

stated that he had worked at Bethlehem Steel in Lackawanna, New York ("Bethlehem

Steel"), but did not provide a start date for his employment. Dkt. #13-1, p.206. Bethlehem Steel is recognized as a covered facility from 1949 to 1952 due to its participation as an atomic weapon employer with the Department of Energy during this time period. Dkt. #13, p.82 n.2.

By letter dated September 19, 2013, EEOICP asked Mr. McAlister to provide the dates he worked at Bethlehem Steel and to execute an Authorization to Obtain Earnings Data from the Social Security Administration ("SSA"), to allow the EEOICP to obtain records to establish his entitlement to benefits. Dkt. #13-1, p.171. He was also asked to provide any documents in his possession establishing that he worked at a facility covered under the EEOICP during a covered period of time. Dkt. #13-1, p.171.

By letter dated November 4, 2013, EEOICP acknowledged receiving sufficient evidence to establish that Mr. McAlister was diagnosed with a qualifying cancer, but reminded him that he had not provided dates of employment at Bethlehem Steel and provided him another SSA Authorization. Dkt. #13-1, p.160. Mr. McAlister's claim was closed administratively following his death on December 14, 2013. Dkt. #13-1, p.135. Mr. McAlister's children then filed this Survivor's claim for Benefits under the EEOICP.  Dkt. #13-1, pp.140, 148 & 150.

By letter dated February 10, 2014, the Pension Benefit Guaranty Corporation (PBGC"), responded to a Freedom of Information Act ("FOIA"), request by

Mr. McAlister's daughter, providing "all employment/personnel records from Bethlehem Steel contained in Mr. McAlister's PBGC Pension Benefit file," as well as his "PBGC Benefit Determination Letter and Benefit Statement." Dkt. #13-1, p.137. Plaintiffs submitted to the EEOICP a "Table of Earnings" received from the PBGC indicating earnings of $1,964.35 in 1951 and $2,979.10 in 1952, which plaintiffs submitted to the EEOICP. Dkt. #13, p.204.

On July 8, 2014, the SSA provided the EEOICP with an Itemized Statement of Earnings indicating that in 1951, Mr. McAlister earned $290.15 from Buffalo General Hospital and $1,674.20 from Pratt & Letchworth, for a total annual income of $1,964.35 and that in 1952, Mr. McAlister earned $1,903.05 from Pratt & Letchworth and $1,076.05 from Amcast Industrial Corporation, for a total annual income of $2,979.10. Dkt. #13-1, p.64. The Itemized Statement of Earnings indicated income from Amcast Industrial Corporation through the third quarter of 1953. Dkt. #13-1, p.64. Mr. McAlister earned income from Bethlehem Steel beginning in the fourth quarter of 1953 through the first quarter of 1954. Dkt. #13-1, p.65. Mr. McAlister's income for the remainder of 1954 and the first quarter of 1955 came from White Poultry Co., at which time Mr. McAlister returned to work at Bethlehem Steel and, with the exception of the first quarter of 1961, last quarter of 1971 and first quarter of 1972, continued employment at Bethlehem Steel through 1984. Dkt. #13-1, pp.65-66.

On July 18, 2014, the EEOICP district office issued a Notice of Recommended Decision accepting that Mr. McAlister was employed at Bethlehem

Steel between January 1951 and October 31, 1984. Dkt. #13-1, p.46.  More specifically,

the EEOICP district office stated:

> Patricia D. Radcliffe submitted a copy of James D. [sic] McAlister's Pension Benefit Guaranty Pension plan at Bethlehem Steel. The pension records showed he began his pension plan in 1951 and it ended in 1984. The district office also received an itemized statement of earnings from the Social Security Administration. The statement of earnings show James J. [sic] McAlister received earnings from Bethlehem Steel in Lackawanna, NY from 1953 to 1984. Based on the totality of evidence the district office has determined James J. [sic] McAlister was employed at Bethlehem Steel Corporation in Lackawanna, NY from 1951 to 1984.

Dkt. #13-1, p.45.


On August 27, 2014, the EEOICP's Final Adjudication Branch ("FAB"),

issued a Remand Order noting the discrepancy between the PBGC and SSA records,

stating:

> The employee's pension records did not identify the name of the employer that his earnings were associated with. In addition, a review of the earnings statement from the Social Security Administration documented that the employee's earnings at Bethlehem Steel began in the 4th quarter of 1953 which is outside the covered employment timeframe for this facility. The employee's earnings statement show that the employee earned wages from the Buffalo General Hospital during the 1st and 2nd quarters of 1951, from Pratt & Letchworth Co. Inc., the 2nd quarter of 1951 through the 3rd quarter of 1952 and from Amcast Industrial Corporation the 3rd quarter of 1952 through the 3rd quarter of 1953. As a result of the findings, the FAB concluded that the employment evidence of record is not sufficient to establish that the employee was a covered employee at Bethlehem steel during a covered time period.

Dkt. #13-1, p.13.

By Memorandum dated September 15, 2014, the district office requested reversal of remand, arguing that the PBGC correspondence indicates that PBGC was enclosing all employment/personnel records from Bethlehem Steel contained in Mr. McAlister's PBGC Pension Benefit File and noting that the pension benefit plan begins in 1951 and ends in 1984, using 35 years for number of years in calculation . Dkt. #13-1, p.3. The district office suggested that Bethlehem Steel erred in reporting wages to SSA, noting that a PBGC administrator informed the district office that Bethlehem Steel began keeping more accurate records beginning in 1953. Dkt. #13-1, p.3. The district office opined that this statement "supports the error in reporting to SSA with regard to only showing wages earned from Bethlehem Steel beginning in 1953, contrary to actual pension records showing W-2 earnings beginning in 1951 and consecutive years following up to, including, and beyond 1953." Dkt. #13-1, p.3.

By Memorandum dated November 12, 2014, the Unit Chief for Policies, Regulations and Procedures at the EEOICP advised the district office as follows:

> To resolve the discrepancy in the records, National Office staff contacted the PBGC and spoke with Denise Himme, who works exclusively on Bethlehem Steel matters for them. She said that in addition to the "Table of Earning" [sic] by the claimant that was obtained from the PBGC via FOIA, the PBGC has employment cards related to the employee. She reviewed these cards and said those indicate that the employee's first day of employment at Bethlehem Steel was September 29, 1953. She also said that given the employee's February 14, 1934 date of birth, he would have been to young to work at Bethlehem Steel prior to 1953, as they had a minimum age for employment of 19. While she did not provide an[] explanation for the PBGC statement in the DEEOIC files, once this information is put in the context of the full information held by PBGC, it is clear that it is not appropriate to credit the employee with employment at

-5-

Bethlehem Steel prior to the 4th quarter of 1953, as shown
on the records from SSA.

Dkt. #13, p.220. The Employment Record from Bethlehem Steel indicates that plaintiff

was 19 years of age and was examined by Dr. Roberts on September 29, 1953 and by

Dr. Hoeltzer on February 18, 1955. Dkt. #13, p.154.

By letter dated November 20, 2014, the district office noted the conflict

regarding Mr. McAlister's start date at Bethlehem Steel between the PBGC records and

the SSA records and provided plaintiffs with the preceding paragraph as explanation for

the determination to deny the request to reverse the FAB's remand order. Dkt. #13,

p.212. The district office invited plaintiffs to present any additional employment

evidence to demonstrate that Mr. McAlister was employed at Bethlehem Steel prior to

the 4th quarter of 1953. Dkt. #13, p.212.

On December 6, 2014, plaintiffs submitted a copy of Mr. McAlister's

obituary indicating that Mr. McAlister began employment at Bethlehem Steel "[a]round

the age of 18"; the PBGC Table of Earnings; Bethlehem Steel Service Record; and

affidavits from Eli S. Earthman, Dorothy McAlister Patterson and Wanda McAlister. Dkt.

#13, pp.178, 185. Mr. Earthman affirms that he became an employee at Bethlehem

Steel during the war at the age of 16. Dkt. #13, p.205. Dorothy McAlister Patterson

affirms that her father "knew one of the employers and signed for [her brother] to

become an employee." Dkt. #13, p.206. She also affirms that she was married in 1952

and that her brother, who was in her wedding, "was employed at [Bethlehem Steel],

driving his own car, and making decent money as I recall to the best of my knowledge."

Dkt. #13, p.206. Wanda McAlister affirms that she was dating Mr. McAlister's uncle, whom she later married, and recalled that "[e]veryone was talking about [Mr. McAlister] because he was one of the youngest men with money and driving his own vehicle." Dkt. #13, p.207.

By letter dated January 13, 2015, the district office acknowledged plaintiffs' submission and advised plaintiffs that the PBGC Table of Earnings appears to be a working document to calculate Mr.McAlister's pension benefits based upon life time employment/taxable income from 1951 through 1992 rather than employment verification at Bethlehem Steel. Dkt. #13, p.192. The district office further advised that the earnings from Buffalo General Hospital, Pratt & Letchworth Co. Inc. and Amcast Industrial Corporation reflect full employment under the SSA records for 1951 and 1952. Dkt. #13, p.192. The district office noted that it had also received an employment service record indicating that Mr. McAlister's employment date at Bethlehem Steel commenced on September 30, 1953. Dkt. #13, p.192. The Service Record indicates that plaintiff was a handyman from September 30, 1953 through December 7, 1953, at which time he moved to the mill as a laborer until January 8, 1954. Dkt. #13, p.208. The Service Record then indicates a break in service until February 21, 1955, when plaintiff began work as a laborer in the coke ovens. Dkt. #13, p.208. The Service Record further indicates a break in service between December 10, 1960 and May 3, 1961, as well as between July 30, 1971 and June 12, 1972. Dkt. #13, p.208.

On February 9, 2015, the district office recommended that plaintiffs' claim be denied. Dkt. #13, p.180.  Plaintiffs objected to the recommendation and requested a

hearing, which was held on May 21, 2015. Dkt. #13, pp.24-62. At the hearing, plaintiffs'

authorized representative argued that they had not received copies of the SSA records

and were not afforded an opportunity to question Ms. Himme. Dkt. #13, pp.42-43. The

hearing representative informed plaintiffs that he would supply the records to them. Dkt.

#13, p.43. Plaintiffs' authorized representative also argued that they had contacted

Laurie Evans, the author of the February 10, 2014 PBGC letter, who indicated that to

be included in the pension calculation, the wages included in the Table of Earnings had

to have been earned by Mr. McAlister from Bethlehem Steel. Dkt. #13, p.45.

Plaintiffs submitted a letter dated May 14, 2015 from Maria E. Ganez, a

government informational specialist stating that the Table of Earnings was provided to

the PBGC by Bethlehem Steel and represents a true and accurate list of Mr. McAlister's

earnings from only Bethlehem Steel. Dkt. #13, pp.45-46 & Dkt. #13, p.149. The letter

further states:

> Pursuant to your request, I am enclosing an Attestation
> certifying that the enclosed document is a true and correct
> copy of the Table of Earnings provided to PBGC by
> Bethlehem Steel Corporation. Unfortunately, we cannot
> attest to the accuracy of its content because this document
> was created by the prior plan administrator and not PBGC."

Dkt. #13, p.149. Ms. Ganez attested that the Table of Earnings was

> a full, true and correct copy of the true and correct copy of
> the Table of Earnings provided to PBGC by Bethlehem Steel
> Corporation regarding Mr. James T. McAlister's employment
> with Bethlehem Steel Corporation. The original documents
> are in the custody of the [PBGC].

Dkt. #13, p.150. A second page of the Table of Earnings submitted by Ms. Ganez notes

that "earnings are as reported by the [SSA]." Dkt. #13, p.151.

Plaintiffs' authorized representative argued that it defies common sense that PBGC would have incorporated records from three other employers into their pension calculation for Bethlehem Steel. Dkt. #13, p.53. Plaintiffs' authorized representative also noted a discrepancy in that the Employment Record indicates plaintiff's prior employer was Pratt & Letchworth, while the SSA records indicate that plaintiff was working for Amcast immediately prior to Bethlehem Steel. Dkt. #13, p.50. Plaintiffs' authorized representative argued that it was not unusual at the time for Bethlehem Steel to engage younger workers in probationary positions before engaging them as a full hire. Dkt. #13, pp.50-51. However, plaintiffs' authorized representative argued that it would have been impossible for Mr. McAlister to have earned the $2,845.43 included in the PBGC Table of Earnings for 1953 subsequent to a start date of September 30, 1953. Dkt. #13, p.32. Doreen McAlister testified at the hearing that she discussed the claim with her father before he died, and he told her that he started at Bethlehem Steel about 1951, 1952. Dkt. #13, pp.55-56.

On September 23, 2015, the FAB issued a Final Decision following a hearing denying plaintiffs' claim. Dkt. #13, p.78. In support of the decision, the FAB concluded that "[c]onsidered in its totality, the employment evidence, including wage tables and statements received from PBGC staff, SSA itemized statements of earnings and employment and medical certification cards, establishes that the employee started his employment at Bethlehem Steel on or about September 29, 1953." Dkt. #13, p.84. For example, the FAB noted that Ms. Ganez cautioned that PBGC could not attest to the accuracy of the earnings information because the document was created by the

prior pension plan administrator rather than PBGC and that the sum of Mr. McAlister's wages from Buffalo General Hospital and Pratt & Letchworth in 1951 equal the wages set forth in the Table of Earnings for 1951; the sum of Mr. McAlister's wages from Pratt & Letchworth and Amcast Industrial equal the wages set forth in the Table of Earnings for 1952; and the sum of Mr. McAlister's wages from Amcast and Bethlehem Steel equal the wages set forth in the Table of Earnings for 1953. Dkt. #13, pp.81 & 83. The FAB further noted that the Employment Record indicating medical certification on September 29, 1953 contains the last four digits of Mr. McAlister's social security number and also indicated a second medical certification on February 18, 1955, which would follow the break in earnings from Bethlehem Steel in 1954 revealed in SSA's Statement of Earnings. Dkt. #13, pp. 81. Furthermore, the FAB noted that the Service Record indicating an initial position as handyman on September 30, 1953 includes the effective date of Mr. McAlister's pension. Dkt. #13, p.81.

Plaintiffs' sought reconsideration of the Final Decision, arguing that "they were denied due process of law and they initially were approved and the only alleged evidence against us has never been provided to us despite repeated requests." Dkt. 313, p.226. More specifically, plaintiffs argued that they were never provided with an opportunity to review information, examine documents or question Ms. Himme, thereby depriving them of due process of law. Dkt. #13, p.15.

In response to the request for reconsideration, the FAB invited plaintiffs to provide any additional evidence or argument they wished to be considered. Dkt. #13,

p.19. On December 22, 2015, the FAB denied plaintiffs' request for reconsideration, because plaintiffs had not submitted any argument or evidence that justified reconsideration of the Final Decision. Dkt. #13, p.11.

Plaintiffs commenced this action alleging violation of their constitutional right to due process in the handling of their claim for survivors benefits, resulting in an arbitrary and capricious determination unsupported by substantial evidence. Dkt. #1. Specifically, plaintiffs argue that they were denied a full and fair hearing because the DOL considered evidence from Ms. Himme and the SSA without affording plaintiffs the opportunity to review this information and discounted evidence from Ms. Gomez. Dkt. #16, p.4.

The government responds that the Department of Labor assisted plaintiffs in gathering evidence, repeatedly invited the submission of additional evidence, granted an oral hearing and appropriately considered the evidence before rendering a decision setting forth a meritorious basis for its denial of plaintiffs' claim to survivors benefits. Dkt. #17.

Plaintiffs reply that they were denied due process of law because the adjudicator relied upon notes, which they were unable to view, from a telephone conversation between an unknown policy analyst and Ms. Himme at the PBGC. Dkt. #18, pp.1-3. Plaintiffs argue that it was arbitrary and capricious for the adjudicator to have considered such triple hearsay as testimony. Dkt. #18, pp.2-3.

The Due Process Clause of the Fifth Amendment to the United States Constitution, which is enforceable against federal agencies such as the Department of Labor, provides that "[n]o person . . . shall be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.  Thus, to plead a denial of due process claim, plaintiffs must demonstrate a constitutionally protected property interest. *Adams v. U.S. Dep't of* Labor, 360 F. Supp.3d 320, 344 (D.S.C. 2018).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Whether a plaintiff has a clear entitlement to a benefit is determined by examining the degree of discretion afforded to the entity dispensing the benefit. *Muller Tours, Inc. v. Vanderhoef*, 13 F. Supp.2d 501, 507 (S.D.N.Y. 1998). A legitimate claim of entitlement exists when a regulatory or statutory scheme places substantive limitations on official discretion or meaningfully channels official discretion by mandating a defined administrative outcome. *Alexander v. Azar*, 370 F. Supp.3d  302, 314 (D. Conn. 2019).

As relevant to plaintiffs' claim pursuant to Part B, the EEOICP provides that survivors of a deceased covered employee shall receive compensation for the disability or death of that employee from that employee's occupational illness in the amount of $150,000. 42 U.S.C. § 7384s. A covered employee includes a covered employee with cancer, which is defined as an individual with a specified cancer who is a member of the Special Exposure Cohort, if and only if that individual contracted that specified cancer, *inter alia*, at an atomic weapons employer facility. 42 U.S.C.

§§ 7384l(1)(B) & (9)(A). Because an award of benefits pursuant to this section of the EEIOCP is dependent upon meeting objective criteria rather than persuading the EEOICP to exercise discretion, plaintiffs possess a property interest in these benefits. *Cf. American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 61 (1999) (rejecting claim of property interest in payment of medical benefits where payment is conditioned upon determination that medical treatment at issue is reasonable and necessary).

"Though the required procedures might vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Brock v. Roadway Exp., Inc.,* 481 U.S. 252, 261 (1987) (internal citation and quotation omitted); . *See Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) (the due process clause is "flexible and calls for such procedural protections as the particular situation demands"). In the instant case, there is no question that plaintiffs were afforded notice of evidence gathered by the agency to assess the claim and repeatedly afforded the opportunity to present evidence demonstrating that Mr. McAlister was employed at Bethlehem Steel during the covered period. Plaintiffs were also afforded the opportunity to challenge the recommended denial at a hearing where they appeared with their authorized representative. Subsequent to that hearing, plaintiffs were permitted to introduce information from Ms. Ganez at PBGC to challenge the information Ms. Himme provided to EEOICP. Even after the Final Decision, in response to plaintiffs' request for reconsideration, plaintiffs were invited to provide any additional evidence or argument they wished to be considered. Dkt. #13, p.19. Thus, this is not a case where plaintiffs

were deprived of due process, but rather a case of whether the decision rendered by EEOICP is supported by sufficient evidence.

Because Part B of the EEOICP is silent with respect to procedures for judicial review, courts review final decisions denying claims for compensation in accordance with the Administrative Procedure Act ("APA"). *See Lahndorff v. U.S. Dep't of Labor,* No. 5:15-CV-22, 289 F. Supp.3d 826, 830-31 (W.D. Ky. Oct. 5, 2017). The APA requires reviewing courts to, *inter alia,* hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Natural Res. Def. Council, Inc. v. U.S. EPA.*, 658 F.3d 200, 215 (2d Cir. 2011) (internal quotation and citation omitted). Conversely, an agency action is lawful where the agency articulates a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A reviewing court should not substitute its judgment for that of the agency but must confine itself instead to ensuring that the agency remained within the bounds of reasoned decisionmaking. *Dep't of Commerce v. New York*, __ U.S. __, 139 S.Ct. 2251, 2569 (2019).

In the instant case, the EEOICP reasonably relied upon the SSA Statement of Earnings indicating that Mr. McAlister's earnings between 1949 and 1952 came from employers other than Bethlehem Steel and that his employment with Bethlehem Steel did not commence until 1953; the Employment Record indicating that Mr. McAlister underwent a physical examination for Bethlehem Steel on September 29, 1953; and the Service Record indicating that Mr. McAlister began working as a handyman at Bethlehem Steel on September 30, 1953 in making its determination that there was insufficient evidence to demonstrate that Mr. McAlister was employed by Bethlehem Steel between 1949 and 1952 as required to fit within the parameters of a covered employee under Part B of the EEOICP. Accordingly, it is recommended that the EEOIC's Final Decision denying plaintiff's claim for survivor's benefits pursuant to Part B of the EEOICP be affirmed.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the

magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985);  *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**    **Buffalo, New York**
        **November 23, 2020**

                            *s/ H. Kenneth Schroeder, Jr.*
                        **H. KENNETH SCHROEDER, JR.**
                        **United States Magistrate Judge**